UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDELL COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALLISON SOCIAL WORKER, et al.,<br><br>Defendants. | Case No. 19-cv-00964-SI<br><br>**ORDER OF DISMISSAL WITH PARTIAL LEAVE TO AMEND, DENYING REQUEST FOR COUNSEL, AND DENYING IN FORMA PAUPERIS APPLICATION**<br><br>Re: Dkt. Nos. 1, 5, 11 |

Wendell Coleman, an inmate currently at the Napa County Jail, filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. The complaint is now before the court for review pursuant to 28 U.S.C. § 1915A. Coleman's request for appointment of counsel and his application to proceed *in forma pauperis* also are before the court for consideration.

**BACKGROUND**

The complaint names seven people as plaintiffs, but is signed by only Wendell Coleman, who lists himself as "lead plaintiff," Docket No. 1 at 3, and contains only allegations about him.

The complaint alleges the following about events and omissions occurring at Napa State Hospital: Therapist Sarah and social worker Allison have denied Coleman law library access for ten weeks. It took over six weeks to get copies made of documents that are pertinent to Coleman's legal actions. The mailroom delays mail. Coleman has "been denied access to religious services." Docket No. 1 at 3.

**DISCUSSION**

A.    Dismissal Of Plaintiffs Other Than Wendell Coleman

The complaint lists Wendell Coleman and six other persons as plaintiffs. (Coleman has filed several actions in which he lists additional inmates as plaintiffs. *See, e.g., Coleman, et al. v. Nguyen, et al.,* No. 18-cv-3468 SI; *Coleman, et al. v. Napa County Dep't of Corr., et al.,* No. 18-cv-4751 SI. In each action, the court dismissed the additional plaintiffs.) The use of co-plaintiffs presents a procedural problem unique to prisoner litigation. The court now considers whether the seven plaintiffs should proceed together in a single case or instead should each maintain a separate case. The court concludes that the plaintiffs should proceed in separate cases.

"A district court possesses inherent power over the administration of its business." *Spurlock v. Federal Bureau of Investigation*, 69 F.3d 1010, 1016 (9th Cir. 1995); *see Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.,* 146 F.3d 1071, 1074 (9th Cir. 1998) (district court possesses inherent power to control its docket, as long as power is exercised in a manner consistent with rules and statutes). This power includes the authority to promulgate and enforce rules for the management of litigation and the court's docket. *Spurlock*, 69 F.3d at 1016 (citations omitted); *see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) (inherent powers are tools for "'control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases'").

Basic case management principles of delay reduction and avoidance of confusion call for the plaintiffs' claims to proceed in separate cases. The main problem with having unrepresented inmates proceeding as co-plaintiffs is that inmates lack control over their ability to access each other to prepare documents and prosecute a case. Inmates are frequently moved; even inmates who initially are physically close to each other often do not remain so for the months or years that it takes for a case to work its way through to judgment.

Here, although the seven plaintiffs apparently were in custody at the Napa State Hospital at some point, Coleman has been moved to the Napa County Jail while other plaintiffs apparently have not been moved (as they have not filed notices of change of address). The *pro se* plaintiffs do not now have ready access to each other. The plaintiffs' physical separation has and will impact this

litigation because they are unable to work on the case together. The lack of coordination is already on display in the complaint, which consists of only Coleman's claims.

The plaintiffs also may not have access to each other in the future to prepare documents and to discuss the case. Perhaps one plaintiff will be moved to a different facility (as Coleman has been) or be released from custody – all of which will make their joint prosecution of this case inordinately more difficult. The slow pace of plaintiffs' communications with each other will result in extensive delays at each point in the litigation where they are required to file anything with the court. As *pro se* plaintiffs, none of the plaintiffs have the authority to represent the others. *See Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("a litigant appearing in propria persona has no authority to represent anyone other than himself"). Thus, this case will be delayed as any potential filing from the plaintiffs is shuttled back and forth between the plaintiffs until all are comfortable signing it. One alternative is to permit the plaintiffs to file separate documents, but this essentially results in multiple cases within a case, which has few benefits to match the substantial confusion caused by it. Having the plaintiffs proceed separately will make their claims easier to manage and resolve.

For these reasons, the court exercises its inherent power over the administration of its business and orders that each plaintiff other than Wendell Coleman must proceed in separate actions rather than proceeding as co-plaintiffs in this action. Huen Thach, Connie Bedwell, Bradley Harp, Michael Estes, Chad Watkins, and Marco Moon are now dismissed from this action. The dismissal is without prejudice to each of these persons filing a new complaint in which he or she asserts only his or her claims. All further filings by Coleman concerning his claims must be filed in the present case (i.e., Case No. 19-cv-964 SI) and must list only Wendell Coleman as a plaintiff.

B. <u>Review of Complaint</u>

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b)(1),(2). *Pro se* complaints

3

must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

There are several problems with the complaint. Leave to amend is granted so that Coleman may attempt to cure the deficiencies in his complaint.

<u>Law library access</u>: Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). The Ninth Circuit has "traditionally differentiated between two types of access to court claims: those involving prisoners' right[s] to affirmative *assistance* and those involving prisoners' rights to litigate without active *interference*." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir.2011) (emphasis in source), *overruled on other grounds as stated by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).

To allege a claim for denial of access to the courts of the first sort (i.e., denial of affirmative *assistance*), a plaintiff must allege facts showing that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis v. Casey*, 518 U.S. at 350-51. To prove an actual injury, the prisoner must show that the inadequacy hindered him in presenting a non-frivolous claim concerning his conviction or conditions of confinement. *See id.* at 355. Examples of impermissible hindrances include: a prisoner whose complaint was dismissed for failure to satisfy some technical requirement of which, because of deficiencies in the prison's legal assistance facilities, he could not have known; and a prisoner who had "suffered arguably actionable harm" that he wished to bring to the attention of the court, but was so stymied by the inadequacies of the prison's services that he was unable even to file a complaint. *See id.* at 351.

To allege a claim for a violation of the right to litigate without active *interference*, the plaintiff must identify the interference and allege that he has suffered an actual injury, such as the dismissal of his pending action. *See Silva*, 658 F.3d at 1103–04. Additionally, the "underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v.*

4

*Harbury*, 536 U.S. 403, 415 (2002). The underlying cause of action must be described by allegations in the complaint sufficient to give fair notice to a defendant, *id.* at 416, and to the court in a prisoner action that must be screened under 28 U.S.C. § 1915A.

Coleman alleges that he was denied law library access but provides too few details for the court to determine that a claim is stated. Leave to amend is granted so that he may attempt to allege a claim for relief. For each claim of denial of access to the courts or denial of the right to litigate without interference, Coleman must allege enough facts to state a claim that is plausible on its face. The court will not read through exhibits to piece together a claim for a plaintiff who has not pled one. If Coleman contends that there have been several violations of his right to access the courts, Coleman must allege each one separately and link particular defendants to each claim by alleging what each defendant did or failed to do that caused a violation of his right to access to the courts. For any case that he contends has been dismissed or has had a ruling adverse to him, he must identify the case (by case name, number, and court name), and describe what happened in that case to show an actual injury.

Religious services: The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I. "The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). The free exercise right is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security. *See O'Lone v. Shabazz*, 482 U.S. 342, 348-49 (1987). In order to prevail on a free exercise claim, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).

The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, provides that no state may impose a "substantial burden" on an inmate's exercise of religion unless the action or policy in question provides the least restrictive means of serving a

5

compelling governmental interest. 42 U.S.C. § 2000cc-1(a). A "substantial burden" on "religious exercise" is one that imposes "a *significantly great* restriction or onus upon such exercise." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1125 (9th Cir. 2013) (emphasis added) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)).

Coleman alleges that he was denied access to unspecified religious services on an unstated date by unidentified persons. He provides too few facts for the court to determine that a claim for relief is stated. Leave to amend is granted so that he may attempt to state a claim for a denial of his religious freedom rights. In his amended complaint, Coleman needs to identify his particular religion, identify the specific services he requested access to and was denied, state the date(s) on which the denial(s) occurred, and specify who the wrongdoers were.

Mail services: Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for violation of the First Amendment. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). But a temporary delay or isolated incident of delay does not violate a prisoner's First Amendment rights. *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (policy of diverting publications through property room reasonably related to prison's interest in inspecting mail for contraband); *accord Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (content-neutral short-term and sporadic delays in prisoner's receipt of mail did not violate his 1st Amendment rights).

Coleman alleges that inmate mail is not delivered or sent "efficiently" by the mailroom at Napa State Hospital. Docket No. 1 at 3. The complaint provides too few facts to state a claim upon which relief may be granted against anyone. The complaint's allegation that mail was not handled "efficiently" is too conclusory to support a claim for relief. Leave to amend is granted so that Coleman may attempt to state a claim for interference with his mail. In his amended complaint, Coleman must allege how frequently his mail was delayed, for how long the mail was delayed, when the mail was delayed, and who delayed the mail.

Instructions applicable to all claims: Coleman must state each claim separately in his amended complaint. For each claim, he must allege the facts showing his entitlement to relief. As

6

mentioned earlier, he must provide dates for the events and omissions alleged in the amended complaint. For each of his claims, Coleman must link defendants to his claims by alleging facts showing the basis for liability for each individual defendant. He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of Coleman's constitutional rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right). A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).[1]

Coleman names Dr. Patterson as a defendant but does not allege any wrongdoing against him. If Coleman does not include allegations against Dr. Patterson in the amended complaint, Dr. Patterson will be dismissed.

Coleman names Napa State Hospital as a defendant. The Eleventh Amendment to the U.S. Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state, absent consent to the filing of such suit. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985). Eleventh Amendment immunity extends to suits against a state agency, *see, e.g., Brown v. Cal. Dep't of Corrs.,* 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to 11th Amendment immunity); *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th

---

[1] If Coleman does not know the true name of the alleged wrongdoers, he may use Doe defendant designations, so that each person is separately identified as a Doe defendant, e.g., John Doe # 1, John Doe # 2, Jane Doe # 1, etc. Although the use of Doe defendants is acceptable to withstand dismissal of the complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process until they are identified by their real names. The burden remains on the plaintiff; the court will not undertake to investigate the names and identities of unnamed defendants. If there are multiple unknown persons, each unknown defendant must be identified as a separate John Doe or Jane Doe, e.g., John Doe # 1, Jane Doe # 1, Jane Doe # 2, etc., so that eventually each John Doe and Jane Doe defendant can be replaced by a separate person when his or her true name becomes known.

Cir. 2003) (11th Amendment bars suit against state superior court and its employees). Eleventh Amendment immunity requires dismissal without leave to amend of Napa State Hospital because it is considered to be an arm of the State of California and therefore has Eleventh Amendment immunity from Coleman's suit.

Coleman has no standing to assert claims based on the violation of other inmates' rights. His amended complaint may include only claims about violations of Coleman's own rights.

Coleman should attempt to write more neatly in future filings. The court was unable to read some of the words in his complaint.

C. Request For Appointment of Counsel

Coleman requests that counsel be appointed to represent him in this action. Docket No. 5. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Here, exceptional circumstances requiring the appointment of counsel are not evident at this time because Coleman has not filed a pleading showing that he has a claim with any likelihood of success. The court is unable to evaluate the likelihood of success on the merits on the record before the court. The request for appointment of counsel therefore is DENIED. Docket No. 5.

D. *In Forma Pauperis* Application

Coleman states in his *in forma pauperis* application that he has a balance in excess of $16,000.00 in a Wells Fargo Bank account as well as a home that is worth hundreds of thousands of dollars more than the mortgage on it. Docket No. 11 at 2, 3. He has sufficient assets to pay the filing fee. Accordingly, his *in forma pauperis* application is DENIED. Docket No. 11. Coleman must pay the full $400.00 filing fee no later than **July 26, 2019**. Failure to pay the full filing fee by

1 | that date will result in the dismissal of this action.

## CONCLUSION

Plaintiffs Huen Thach, Connie Bedwell, Bradley Harp, Michael Estes, Chad Watkins, and Marco Moon are DISMISSED from this action. The dismissal is without prejudice to each of these persons filing his or her own civil action. Defendant Napa State Hospital is DISMISSED from this action.

The complaint is dismissed with leave to amend as to Wendell Coleman only. Coleman must file an amended complaint no later than **July 26, 2019**, and must include the caption and civil case number used in this order as well as the words AMENDED COMPLAINT on the first page. Coleman is cautioned that his amended complaint must be a complete statement of his claims, except that he does not need to allege any claim that has been dismissed without leave to amend. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). Failure to file an amended complaint by the deadline will result in the dismissal of the action.

Coleman's request for appointment of counsel is DENIED. Docket No. 5.

Coleman's *in forma pauperis* application is DENIED. Docket No. 11. He must pay the full $400.00 filing fee by **July 26, 2019**, or this action will be dismissed.

**IT IS SO ORDERED**.

Dated: June 27, 2019

_____
SUSAN ILLSTON
United States District Judge